**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4752-16T4

MELODY N. VILLANUEVA-
ARROYO,

     Plaintiff-Appellant,

v.

HOUSING AUTHORITY OF THE
CITY OF PASSAIC and VICTOR
CIRILO, individually and in his capacity
as the Executive Director of the Housing
Authority of the City of Passaic,

     Defendants-Respondents.

_____

Argued September 12, 2018 – Decided September 25, 2018

Before Judges Fasciale, Gooden Brown and Rose.

On appeal from Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-0974-15.

Angelo R. Bisceglie, Jr. argued the cause for appellant (Bisceglie & Associates, PC, attorneys; Angelo R. Bisceglie, Jr., on the briefs).

Bernadette M. Peslak argued the cause for respondents (Keenan & Doris, LLC, attorneys; Thomas A. Keenan,

of counsel; Debra M. McGarvey and Bernadette M. Peslak, on the brief).

PER CURIAM

In this employment discrimination case, plaintiff appeals from three orders entered by two judges. There are two orders dated June 15, 2017 which, (1) denied plaintiff's motions to adjourn the trial date, extend the discovery end date (DED), and strike the pleadings of the Housing Authority of the City of Passaic (PHA) and Victor Cirilo (Cirilo) (collectively defendants); and (2) granted defendants' cross-motion to bar plaintiff's medical expert report from her treating doctor. The third order – dated June 21, 2017 – granted defendants' motion for summary judgment dismissing plaintiff's Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8 claim, Family Leave Act (FLA) claim, and remaining employment-related causes of action.

Plaintiff demonstrated exceptional circumstances warranting an adjournment of the trial and extension of the DED. The court should have case managed the outstanding discovery issues (including permitting the use of plaintiff's medical expert) before adjudicating defendants' summary judgment motion. Except for the dismissal of the FLA claim, for which plaintiff's counsel admitted no additional discovery is outstanding, the court improvidently granted summary judgment.

We therefore affirm the order granting summary judgment dismissing the FLA claim (for the reasons given by the court), reverse the remaining orders, and remand and direct the court to manage the discovery issues on an expedited basis. We leave to the discretion of the court how to devise an appropriate case management order and the scheduling of a new trial date.

I.

We begin by briefly summarizing the pertinent facts known at this point. We do so emphasizing that discovery is incomplete, and recognizing that when reviewing an order granting summary judgment, we apply "the same standard governing the trial court . . . ." Oyola v. Xing Lan Liu, 431 N.J. Super. 493, 497 (App. Div. 2013). We owe no special deference to the motion judge's conclusions on issues of law. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). We therefore look at the facts in the light most favorable to the non-moving party – here, plaintiff. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995). Obviously, the remand proceedings will develop additional facts on which the court will inevitably consider defendants' anticipated renewed summary judgment motions. For now, this summary will suffice.

PHA employed plaintiff for approximately sixteen years. She worked for PHA as a procurement and contract manager from 2012 until 2014, when PHA terminated her. In this positon, plaintiff oversaw the reporting of funds on PHA projects, and she was responsible for the preparation, bidding, award, and implementation of PHA construction contracts. Plaintiff reported to Cirilo – the Executive Director of PHA.

In 2013, plaintiff recommended to Cirilo and Vincent Wynter (PHA's Affirmative Action Officer) that PHA entertain separate competitive public bids for two construction projects related to PHA's buildings: one for capital improvements and the other for general repair work. The purported purpose of these projects was to improve the physical conditions of the public housing buildings, thereby making them safer. They agreed and received bids from SAAR Construction.

SAAR had previously done work for PHA. In plaintiff's view, however, that work was substandard, deficient, and fell below PHA standards. Plaintiff brought this to the attention of her superiors at PHA. She recommended that PHA re-bid the projects because she believed that awarding the contracts to SAAR would be a problem on multiple levels. PHA refused to re-bid and awarded the contracts to SAAR.

A-4752-16T4

She then objected to PHA's use of SAAR and refused to participate in what she understood to constitute an activity, policy, or practice of PHA that conflicted with New Jersey's public policy. The import of plaintiff's objection was that awarding the contracts to SAAR would be incompatible with the State's policy of promoting the public health, safety, and welfare of citizens. In plaintiff's view, allowing SAAR to do the work on the projects would expose the tenants who lived in the public housing units of PHA's buildings to substandard living conditions, rather than improved and safe living conditions. She also maintained that awarding the contracts to SAAR would violate our public bidding laws.

The relationship between plaintiff and Cirilo worsened when he started questioning the initial soundness of the decision to bid the jobs separately. The parties discussed his concern – that it was a mistake to award the contract for general repairs separately from capital improvements. According to plaintiff, Cirilo wanted to amend the contracts PHA had awarded to SAAR to reflect both jobs as one contract. Plaintiff objected, this time, to the process of amending the contracts without the necessary votes by the PHA's Board of Commissioners. She alleged that Cirilo responded by telling her that the amendment would be an "internal issue" for the Housing Authority.

A-4752-16T4

Before she voiced her objection to SAAR, Cirilo had stated in plaintiff's performance review that plaintiff had "significant institutional knowledge in the area of purchasing" and she "has shown significant growth in [her] position." According to Cirilo, plaintiff "met capital fund timelines," "adapted to [her] position well," and "show[ed] great potential." In her managerial position, plaintiff played a "high" role in PHA's improved HUD scores in asset property management.

After her objection to SAAR, Cirilo gave plaintiff another review. This time, he questioned plaintiff's institutional knowledge and whether she was suited for the position. According to plaintiff, Cirilo continuously verbally abused her, humiliated her in front of her colleagues, and otherwise retaliated against her for her objection to SAAR. She filed multiple written internal complaints against Cirilo with Wynter alleging that Cirilo verbally abused her in front of her colleagues.

Cirilo then transferred plaintiff to another department and directed her to relocate her office. After that, in October 2014, Wynter fired plaintiff (without reading Cirilo's second evaluation). Plaintiff requested a hearing, under the employee manual, to contest her termination, but she never received one. According to the employee manual, Cirilo would have been designated as the

hearing officer. Plaintiff objected to him fulfilling that role for obvious reasons. Nevertheless, Wynter admitted at his deposition that after he had fired plaintiff, he wanted to rescind the termination and instead impose progressive discipline – consistent with PHA's employee handbook. Later, he stated that suspending plaintiff for five-to-ten days would have been a reasonable option. Cirilo overruled Wynter's recommendation to impose progressive discipline, and PHA let her go.

Plaintiff filed her complaint in 2015. Defendants removed the matter to federal court, but the parties consented to remanding the case to the Superior Court, where they commenced discovery. On May 5, 2017, the court extended the DED to May 20, 2017 so that plaintiff could depose two PHA employees: Barbara Rivera (a Confidential and Executive Secretary) and Andrew Barcia (the Director of Maintenance). By this time, the court had already scheduled a June 26, 2017 trial date.

Plaintiff had previously filed two motions to strike defendants' answer for failure to produce documents before Barcia's deposition. Defendants assured plaintiff that they would produce the information, so plaintiff withdrew those motions. One day before his deposition, defendants produced ninety-four emails. During Barcia's testimony, plaintiff learned about hundreds, if not

thousands, of other emails, along with photographs that defendants did not previously produce. Defendants agreed to allow plaintiff's IT Technician to examine PHA's database and computers to retrieve the emails and photographs that Barcia had sent to Cirilo pertaining to SAAR, but that never happened.

At Rivera's deposition, she testified about PHA's personnel policies, procedures, and employee manual. She explained that, as to disciplinary matters, she worked to ensure compliance with the manual. Rivera testified that approximately four years of disciplinary records existed for other PHA employees containing written warnings, suspensions, and termination of employment, and reflecting that PHA took no disciplinary action, at least for those employees who failed to give tenants proper rent-increase notices. Plaintiff had requested those records to show that PHA did not immediately terminate those employees, unlike plaintiff. Defendants did not produce those records.

On appeal, plaintiff argues primarily that the court abused its discretion by not adjourning the trial and extending the DED. She maintains that the court should have carried or denied without prejudice defendants' summary judgment motion until it was ripe for consideration. Plaintiff contends that in addition to erroneously adjudicating the dispositive motion on an incomplete record, the

8

court resolved material fact issues, ignored testimony from Wynter, Cirilo, Rivera, and Barcia, and misapplied the law on her CEPA and employment causes of action.

"An appellate court applies an abuse of discretion standard to decisions made by [the] trial courts relating to matters of discovery." C.A. ex rel. Applegrad v. Bentolila, 219 N.J. 449, 459 (2014) (alteration in original) (internal quotation marks and citation omitted). "We generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law." Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005).

Under Rule 4:24-1(c), plaintiff was required to show exceptional circumstances to extend the DED because the court had scheduled a trial date. See Rivers, 378 N.J. Super. at 78. "[E]xceptional circumstances generally denote something unusual or remarkable. The moving party must demonstrate counsel's diligence in pursuing discovery, establish the essential nature of the discovery sought, explain counsel's failure to request an extension within the original time period, and show that the circumstances presented were clearly beyond counsel's control." Bldg. Materials Corp. of Am. v. Allstate Ins. Co., 424 N.J. Super. 448, 479 (App. Div. 2012).

Plaintiff diligently pursued discovery. Plaintiff's counsel propounded interrogatories, made multiple document demands, served numerous deposition notices for PHA witnesses, and took depositions. He communicated with his adversary orally and in writing and followed up on outstanding discovery issues, including demanding agendas and minutes of meetings and reimbursement requests. He made motions to strike defendants' pleadings for failure to produce documents in anticipation of deposing Barcia and Rivera. And plaintiff's counsel successfully obtained an order permitting the depositions of Barcia and Rivera, which he took. Although he had requested documents before the Barcia and Rivera depositions, defendants produced only some of the emails the day before Barcia's deposition. At the deposition, through no fault of his own, plaintiff's counsel learned about hundreds, if not thousands, of additional emails and photographs, dating back to 2012, concerning SAAR. At Rivera's deposition, Rivera did not produce all of the disciplinary records for the last four years as requested by plaintiff's counsel.

The outstanding discovery is essential to plaintiff's claims. "[T]he legislative purpose animating CEPA is . . . to protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." Lippman v. Ethicon,

Inc., 222 N.J. 362, 378 (2015) (internal quotation marks and citation omitted).

The pertinent part of the statute states:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following:
>
> . . . .
>
> c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
>
> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law, . . . ;
>
> (2) is fraudulent or criminal, . . . ; or
>
> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.
>
> [N.J.S.A. 34:19-3.]

Plaintiff's CEPA theory is that PHA violated the law by awarding the contracts to SAAR, and that she refused to participate in what she understood constituted an activity, policy, or practice of PHA that conflicted with New Jersey's public policy of promoting the public health, safety, and welfare of its citizens. Specifically, she felt that allowing SAAR to do the work on the projects would expose the tenants who lived in the public housing units of PHA's buildings to substandard living conditions, rather than improved and safe living

11

conditions. The discovery in question – including but not limited to hundreds, if not thousands, of SAAR emails and photographs; handwritten notes, agendas and minutes of meetings and reimbursement requests; disciplinary records; examination of PHA's database; and a deposition of Wanda Estevez (an individual who is under Cirilo's supervision and who PHA refused to produce) – are essential to her CEPA and employment-related claims. This information is also relevant to her claim that PHA violated bidding laws. According to Barcia, PHA overlooked the problems with SAAR, at a cost to the taxpayers, thereby disregarding the residents. Finally, the outstanding discovery is relevant to whether PHA illegally paid SAAR for work it never did, such as clean-up work that Barcia asserted PHA employees did rather than SAAR.

Plaintiff requested a trial adjournment and the outstanding discovery before the May 20, 2017 DED expired and was compliant with defendants' discovery demands. The circumstances presented were clearly beyond the control of plaintiff and her counsel. There is no need to repeat the effort plaintiff's counsel made to obtain the discovery, which was solely in defendants' control.

As to the dismissal of plaintiff's case on summary judgment, "[g]enerally, summary judgment is inappropriate prior to the completion of discovery."

<u>Wellington v. Estate of Wellington</u>, 359 N.J. Super. 484, 496 (App. Div. 2003). But a party opposing summary judgment based on incomplete discovery must nonetheless establish, "with some degree of particularity[,] the likelihood that further discovery will supply the missing elements of the cause of action." <u>Ibid.</u> (internal quotation marks and citation omitted). Plaintiff has done that here.

But even on the record before the court on defendants' motion, we conclude that material fact issues precluded summary judgment. Rivera's testimony showed that PHA inconsistently applied its personnel policies. She explained that part of her job included working with these policies daily, to ensure that PHA employees comply with the personnel handbook and employee manual. Wynter corroborated Rivera's testimony by asserting that plaintiff's termination contradicted PHA policy, and that – consistent with PHA's progressive discipline procedures – he wanted to rescind her termination and suspend her instead. Yet, PHA did not even discipline other employees who failed to give proper notice of rent increases. Thus, whether plaintiff had the right to, and reasonably relied on, the protections afforded under the PHA handbook and employee manual – especially because Wynter admitted he failed to comply with them – are fact issues.

Finally, plaintiff served her medical expert report from the treating doctor before – but very close to the expiration of the DED. Defendants knew who the doctor was, had the treatment records, and never deposed the doctor. Barring the report, especially because the DED should have been extended, was unnecessary. If there was any suggestion that the service of the report immediately before the DED expired was the fault of plaintiff's counsel, then there are less severe means to address that situation than the sanction imposed. Here, defendants were not prejudiced, and on remand, can pursue deposing the doctor and retaining their own expert.

Affirmed in part; reversed in part; and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction primarily because if defendants renew their motion for summary judgment, they will do so on an entirely new record.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4752-16T4